The judgment of the court was pronounced by
Preston, J.
The cashier of the Branch of the Mechanics and Traders’ Bank at Opelousas, testifies, that on the 12th of June, 1847, at the steamboat landing in Washington, he delivered to Captain John U. Gordon, of the steamboat Bois d’Arc, a package containing $10,000 in bank notes, with a letter and a scroll, all of which were directed to the cashier of the Mechanics and Traders’ Bank in New Orleans, with a request that he would deliver the same to Samuel C. Bell, the cashier, on his anñval in New Orleans; further, that he stated to him that the package was valuable, and that he should be careful with the same and deliver it to Mr. Bell; and that the captain replied that he would. The money was never received by the bank in New Orleans. The witness did not, at the time of delivering the package, state the amount of money it contained, promise to pay freight, or to make compensation to him as master of the boat for taking charge of the package.
The clerk of the boat proves, and it is not contradicted, that the charge in favor of the boat for carrying money as freight was a half per cent, whether it was in bank notes or specie; the charge being made no doubt more on account of the risk than the trouble of transportation. He further leads us to conclude, that when money was received for transmission on freight or otherwise, it was locked up in a chest kept for that purpose. If the money had been delivered to the master of the boat as a common carrier, he would have charged for the owners of the boat, fifty dollars for its transportation to New Orleans, his care of it, and the risk with regard to it; and the cashier would, in the exercise of common prudence, have taken a bill of lading or receipt for so large an amount. We are satisfied, therefore, that there was no contract made which bound the defendants as common carriers, and rendered them responsible as such for the loss of the money. The authorities quoted by the defendants’ counsel from Story on Bailments, articles 498, 495, 499, 500 and 530, are conclusive on this part of the case. See also 9 L. R. 84.
The plaintiffs do not charge Gordon individually, as a bailee for hire. Indeed, it would have been improper to have made such a contract with him, being master of the boat and bound by his employment to obtain all freight in his power for the owners of the boat, and not for himself. It is not pretended, that a bailment for hire was made with him individually.
The question remains, can the defendants or John H. Gordon be charged as depositaries or mandatories of the plaintiffs ? for, as they took charge of the *607 letter not as carriers for hire, they must be regarded in this light. Indeed, it is proved, aDd is a matter of notoriety, that all letters and packages handed to the master and clerk of the boat were received and carried to New Orleans, and vice versa, and were gratuitously delivered to the correspondents if convenient, or deposited in the post-office. And this custom and accommodation, as observed by plaintiff’s counsel, no doubt originated and has been kept up in consideration of the business and patronage which the city and country extended to the boat in carrying freight and passengers. The custom and accommodation is entirely gratuitous.
Sir William Jones held, that a gratuitous bailee was responsible only for gross negligence amounting to a breach of good faith, or fraud. Judge Story adopts the principle without the qualification of a breach of good faith or fraud. — p. 21 art. 19. Our code declares, that the depositary is bound to use the same diligence in preserving the deposit, that he uses in preserving his own property. Code, 2508. The diligence required of a mandatory acting without reward we suppose to be the same. Code, art. 2972. And, as it would not be permitted to men to plead, that they were more negligent than men ordinarily are, the true rule is, that gratuitous bailees are required to exercise the diligence which men of common prudence ordinarily use. The owners of the boat are excused from liability for the loss of gratuitous deposits on their boat, because they entrusted their own property to the officers, and it is not suggested that they were reputed to be more than ordinarily careless or unskillful.
The most difficult question remains, as to the individual liability of Captain Gordon ; for the plaintiffs contend, that the money was specially entrusted to his care, with an injunction to be careful, as it was valuable; and that he agreed to deliver it personally to Samuel C. Bell, the cashier of the bank in New Orleans on his arrival, and was guilty of gross negligence in not doing so.
The cashier does not state that he informed Gordon of the amount of money contained in the package. Soon after its delivery, he declared to the witness Taylor, that he concealed the amount purposely, because a stranger was standing by and he did not wish to make the amount public. He subsequently stated the same thing, as proved by other witnesses. Moreover, we are led to the conclusion, that he did not inform Gordon that the package contained money at all, because he does not say so, and yet would have proved it if he had so informed him,and not have left so important a fact in this case indoubt. Besides, the reason given for concealing the amount, was equally a reason for concealing the fact, that the package contained money at all. Moreover, two witnesses standing by did not hear him tell the captain that the package contained money.
Gordon was, therefore, simply the depositaiy or mandatory of a letter, or package in the form of a letter, and did not know whether it contained money or not. It was notorious, that the letters and packages of those who patronized the boat were put into the letter-box or clerk’s desk. This was the ordinary care always given or expected, however valuable the letters or packages were to the correspondents. It is urged, that it was expressly stated to the captain that this package was valuable. All correspondents regard their communications as valuable, and the officers of the boat were bound so to regard all letters and packages entrusted to their care. They often contained bills, orders or money, and often did not; they were all entitled to the same care, and the care to be exercised was known to the public. If the packages contained money or were of great value, the means of insuring greater care was palpable, by taking a *608 receipt or bill of lading for them as freight, and thereby securing their deposit under lock and key in a chest provided for money or packages, the certain value of which was known.
There was no information communicated to Gordon which should have induced him to distinguish'this package from others. Indeed, it is proved by a witness who was present when the package was delivered to the master, that the remark of the cashier to him was, that the package was important to the bank; and if so, giving him no reason whatsoever to suspect that it contained the large and, to him, unknown sum of money for which he is sued. He therefore handed it to his clerk to take the same course which other letters and packages took. As the cashier did not commuicate to him that the packages contained money, he could not communicate it to his clerk. The scroll was too large to go into the letter-box, and therefore the clerk put all together into his desk. After this the captain depended on his clerk to deliver them like all other letters or packages, or put them in the post-office, and heal’d nothing more of the package until he learned that it was lost. The evidence renders it probable that the package was purloined, and exonerates the captain from the least suspicion of unfaithfulness with regard to the money.
The promise to deliver the package to the cashier in New Orleans is relied upon as a special undertaking to do so personally. The master of a coasting boat, necessarily much engaged at her points of departure and arrival in his appropriate duties, cannot be supposed to undertake to go about personally to deliver the letters and packages entrusted to him, even if informed that they are valuable. The well understood meaning of his promise to deliver them to whom they are addressed, is, that he will give them in charge to his clerks, to be taken care of and delivered by them in the usual manner.
To charge Gordon with the loss for not having delivered the money in person, the cashier of the bank should have shown to him that the packagage contained $10,000, and to have obtained from him an agreement, with that knowledge, to take the risk of carrying and delivering it in person to Bell, and not to deliver it at the post-office, or entrust it to the clerk of the boat. Considering the very large amount of money, it is not at all probable that the master engaged in all the exigencies belonging to the trip of a coasting boat, would have undertaken a gratuitous mandate attended with so much risk, and the considerable trouble of hunting and delivering the package to the cashier of a bank, when he might more properly, in his situation, have refused, and according to the usual charge of a half per cent, received fifty dollars for the service on account of the boat, and subjected her owners to the risk. At all events, if he undertook such a mandate with a full knowledge of the amount given him in charge, and his risk and responsibility, he would have undoubtedly exercised more care and solicitude, and would not have given the package to the clerk to be thrown promiscuously with the other letters and packages belonging to the boat, in the letter box or clerk’s desk. It would, at least, have been safely put in the iron chest under lock and key, and the loss would not have occurred.
The judgment of the district court is therefore affirmed, with costs in both courts.